*E-FILED* 10/30/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICHARD B. FOX, M.D., | NO. C 04-00874 RS |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS** |
| v. | |
| GOOD SAMARITAN HOSPITAL LP, et al., | |
| Defendants. | |

## I. INTRODUCTION

Defendants Good Samaritan Hospital LP, Samaritan LLC, Good Samaritan Hospital Medical Staff (collectively "GSH"), and HCA, Inc. ("HCA") (collectively "defendants") move to dismiss certain claims for relief brought by plaintiff Richard B. Fox in his second amended complaint ("SAC"). In particular, GSH seeks to dismiss Fox's sixth through eighth claims for relief for violation of Cal. Bus. & Prof. Code § 2506, breach of the implied covenant of good faith and fair dealing, and interference with prospective economic relations. HCA, since 1996 GSH's for-profit parent company, joins GSH's arguments and advances additional bases for dismissal of its own. HCA also seeks dismissal of the fourth and fifth claims for relief alleging unreasonable restraint of trade and monopolization in violation of the Sherman Act. Fox opposes each of those motions. For the reasons explained below, defendants' motions to dismiss will be granted in part and denied in

1

part.

## II. BACKGROUND[1]

GSH's identical privileges rule requires any physician who seeks to practice at that hospital to designate two physicians with identical privileges to serve as backups in the event of the applying physician's unavailability. Fox recounts that he declined to designate backup physicians with the privileges required by GSH. He claims, as a result, that defendants denied him the pediatric intensive care ("PIC") privileges required to provide PIC services at GSH beginning first in 1999, and then at renewal intervals through 2008, thereby requiring him to relocate his practice to a nearby hospital. Fox contends that the rule change was part of an anti-competitive scheme designed to usurp the benefits of Fox's practice and to favor a competing group of physicians with whom defendants had a relationship.

In conjunction with those privilege denials, Fox alleges that defendants: (1) retaliated against him in 2006 after he refused to sign a non-negotiable HCA "Confidential and Security Agreement" containing a corporate "loyalty oath"; (2) interfered with business relations between Fox and his referral sources when those sources could no longer refer PIC patients to him at GSH; (3) disregarded GSH's own hospital bylaws and privileging agreements with regard to "privileging" procedures; and (4) engaged in ongoing civil conspiracies through GSH's medical staff and Dr. Mark McConnell,[2] acting through their respective committees such as the board of trustees ("BOT").[3]

To hold HCA liable for the claims he advances, Fox argues that through its officials it directly participated in the actionable conduct at issue. In particular, Fox alleges that defendants

---

[1] In its July 17, 2008 Order, the Court recited the extensive factual background and procedural history of this case, and that discussion is incorporated here.

[2] Dr. McConnell was under contract to provide PICU services for HCA at GSH and at HCA's San Jose Medical Center until that latter facility closed. He founded the Northern California Pediatric Intensive Care Unit Associates ("NorCal PICU"), and employed other PICU physicians at GSH. HCA awarded a contract to NorCal PICU for coverage of PICU patients at GSH and referral of all PICU patients at GSH in 1999.

[3] The relevant committees are the medical staff executive committee ("MSEC") and the pediatric executive committee ("PEC"). The MSEC makes final recommendations to the BOT for all privileging rules and actions. The PEC is the executive body of the pediatrics department. It makes initial recommendations to the MSEC on all privileging rules and actions involving members of the pediatrics department, including Fox's privileges.

2

acted as a single entity based on the conduct of William Piche (GSH CEO) and Thomas May (HCA Far Western President and former GSH CEO) which included participation in the NorCal PICU contract, the transfers of GSH's pediatric emergency room patients to San Jose Medical Center owned by HCA, and the use of fraudulent Medicare and Medicaid billings. Fox also asserts that HCA remains liable under both alter-ego and agency theories of liability.

Fox began his long-running legal battle against GSH in state court, with three unsuccessful attempts to prompt the issuance of writs of mandamus regarding his medical privileges. With that unsuccessful state court experience behind him, on March 4, 2004, proceeding *pro se*, Fox filed a complaint ("original complaint") in federal court. After numerous amendments to his complaints following various motions from defendants, of the eight claims initially brought, five claims remain at issue.[4]

### III. LEGAL STANDARD

#### A. Anti-Trust Claims

The Ninth Circuit, interpreting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), has applied a heightened pleading standard for antitrust claims. *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 970-71 (9th Cir. 2008); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 n.5 (9th Cir. 2008). As the Ninth Circuit has held, at least in the antitrust context, *Twombly* "retired" the familiar standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), interpreting Rule 8 of the Federal Rules of Civil Procedure, which provided that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Rick-Mik Enters., Inc.*, 532 F.3d at 970-71 (citing *Twombly*, 127 S. Ct. at 1968); *see Kendall*, 518 F.3d at 1047 n.5 ("At least for the purposes of adequate pleading in anti-trust cases, the Court specifically abrogated the usual 'notice pleading' rule . . . ."). Owing to the often increased complexity and expense of discovery and pre-trial litigation in

---

[4] The remaining five claims are: (1) unreasonable restraint of trade - retaliation - in violation of Sherman Act § 1 and Cal. Bus. & Prof. Code § 2056 (claim four); (2) monopolization and attempt to monopolize in violation of Sherman Act § 2 (claim five); (3) retaliation - withholding of hospital privileges in violation of public policy - under Cal. Bus. & Prof. Code § 2056 (claim six); (4) breach of the implied covenant of good faith and fair dealing (claim seven); and (5) interference with prospective economic relations (claim eight).

3

antitrust matters, the Supreme Court reasoned that more must be shown before the action may be allowed to proceed than simply the traditional Rule 8 notice pleading requirements. *Twombly*, 127 S. Ct. at 1966-67.

While Rule 8 mandates only a short and plain statement of the claim showing that the pleader is entitled to relief, in antitrust matters, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Rick-Mik Enters., Inc.*, 532 F.3d at 970 (quoting *Twombly*, 127 S. Ct. at 1965). A plaintiff must do more than provide labels, conclusions, and a formulaic recitation of a claim's elements in the anti-trust context. *Id*. (citing *Twombly*, 127 S. Ct. at 1964-65). A claim of conspiracy under the Sherman Act, in particular, requires that a complaint provide enough factual matter to suggest that an agreement was made. *Id*. (citing *Twombly*, 127 S. Ct. at 1965).

B.  Other Claims

For Fox's remaining state law claims, the traditional pleading standard under Rule 8 remains applicable. A complaint may be dismissed as a matter of law pursuant to Rule 12(b)(6) for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

"A complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). The court, however, "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Id.* at 754-55. A court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. A court's review is limited to the face of the complaint, documents the complaint references, and matters of which the court may take judicial notice. *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).

Motions to dismiss generally are viewed with disfavor and are to be granted rarely. *See*

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Leave to amend must be granted unless it is clear that amendments cannot cure the complaint's deficiencies. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). Nevertheless, when amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## IV. DISCUSSION

A.  HCA

The threshold issue pertaining to HCA is whether, for statute of limitations purposes, the SAC "relates back" to the filing of Fox's original complaint. In the event it does not, the next question then involves determining if Fox identifies actionable conduct ascribable to HCA within the applicable limitations period. Where Fox pinpoints such facts, the final inquiry turns on whether the acts or events properly attach to HCA either as a direct participant or under principles of agency or alter-ego liability. In addition to these issues implicating several claims for relief, as to claim five for monopolization, HCA's amenability to suit depends on whether or not it can "conspire" with its own subsidiary.

1.  Relation Back

HCA argues that the four year statute of limitations applicable to Fox's Sherman Act claims and the two year statute of limitations applicable to his state law claims operate to foreclose the action against it. 15 U.S.C. § 15b; Cal. Civ. Proc. Code § 339(1). An amended complaint relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). In the process of applying Rule 15(c), the court needs to remember that a *pro se* complaint must be held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). On its face, much of the conduct alleged in the SAC would fall outside the limitation periods unless Fox receives the benefit of "relation back" to his original complaint filed as a *pro se* litigant.

The right to invoke the protections of Rule 15(c) is not without limits where undue prejudice from its application would be imposed on defendants. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In *Material Handling Indus., Inc. v. Eaton Corp.*, 391 F. Supp. 977, 980 (E.D. Va. 1975), for

example, an amended complaint was filed with the assistance of counsel that amplified and added allegations to the original *pro se* complaint. Defendant argued that the filing of the amended complaint was the date upon which to trigger the antitrust four year statute of limitations and that it would not relate back to the original complaint because: (1) the prior pleading did not allege the claims with sufficient clarity to give defendant notice of the particular antitrust violations averred against it; and (2) plaintiff alleged additional facts not found in the original complaint. *Id*.

Applying the liberal pleading standards set forth in Rule 15(c), the court first held that two antitrust claims would relate back because the original complaint gave defendant adequate notice, and the claims were substantively the same in both complaints. *Id*. The court, however, took a different view of plaintiff's antitrust conspiracy claim, reasoning that even under Rule 15(c), without a "hint" that plaintiff was attempting to complain of an antitrust conspiracy involving defendant in its original complaint, plaintiff should not enjoy the benefit of Rule 15(c)'s relation back provision. *Id*. The court concluded that relating back would prejudice defendant by depriving it of its defense under the statute of limitations. *Id*. at 980-81.

Here, Fox did not seek to add HCA as a defendant until March 31, 2006. At the hearing, he insisted that he pled facts in his original complaint relating to HCA sufficient to put it on reasonable notice of the subject of the action, and thus justify relation back to the original 2004 complaint. While Fox filed his original complaint *pro se*, a review of that complaint reveals that HCA is referred to at least five times strictly in the context of providing background information on when GSH became a for-profit hospital upon purchase by HCA. Complaint ¶¶ 13, 50, 64, 112(f), 171. Despite having similar claims in both complaints, even when Fox's original *pro se* complaint is given the benefit of liberal construction under Rule 15(c), the pleading is devoid of any suggestion that HCA committed or attempted to commit the antitrust violations described. The simple mention of HCA without more can hardly be deemed to have put it on notice of possible litigation. To deprive HCA of the opportunity to invoke the applicable limitations period from the point at which the amended pleading named HCA would be unduly prejudicial on this record.

Accordingly, those facts that occurred prior to March 31, 2002, will not be permitted to be

used as a basis for HCA's antitrust liability under the Sherman Act.[5] *See Korody-Colyer Corp. v. Gen. Motors Corp.*, 828 F.2d 1572, 1575 (9th Cir. 1987) (refusing to allow original complaint to relate back to amended antitrust complaint because amended complaint contained new claim based on different events); *Louisiana Wholesale Drug Co. v. Biovail Corp.*, 437 F. Supp. 2d 79, 85-88 (D.D.C. 2006) (finding that new claim did not relate back to the original complaint because it did not put the manufacturer and its distributor on notice that they would have to defend against the particular claims even though the new claims were factually based on the original facts); *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 627 F. Supp. 105, 108-09 (S.D. Iowa 1985) (holding that amended antitrust complaint adding additional defendant did not relate back to the original complaint since the conduct set forth therein did not arise out of transactions identified in the original pleading). By the same token, for Fox's state law claims, those facts falling outside the California two year statute of limitations cannot be used to establish liability against HCA.

2. Actionable Conduct Within the Limitations Period

Having determined that Fox is not entitled to relate back to the original 2004 complaint as to HCA for limitations purposes, Fox must identify conduct ascribable to HCA within the applicable limitations period to maintain his claims against it. In the SAC, Fox alleges facts revolving around William Piche, GSH's CEO, and Thomas May, HCA's Far Western President and former GSH CEO, that purportedly relate to HCA. Fox pleads four alleged acts of misconduct by Piche: (1) participation in the NorCal PICU contract; (2) the transfers of GSH's pediatric emergency room patients to the San Jose Medical Center owned by HCA; (3) fraudulent Medicare and Medicaid billings; and (4) efforts to mandate what he characterizes as the 2006 non-negotiable HCA corporate loyalty oath. SAC ¶¶ 37-39, 43, 58-59. The first three series of events occurred outside the federal four year and state two year limitations period and therefore cannot operate as a basis for a claim against HCA.[6] What Fox characterizes as the 2006 "loyalty oath" contained in the "Confidential and

---

[5] The decision is strengthened further by the fact that since April 2005, Fox has been represented by counsel, and did not seek leave to file a first amended complaint until almost a year later.

[6] None of the conduct allegedly undertaken by HCA official Thomas May occurred within the limitations period and therefore cannot serve to underpin a claim for relief against HCA.

7

Security Agreement," however, does fall within the limitations period, and, if properly connected to HCA, may satisfy Fox's burden to present a claim for relief.

### 3. Basis for HCA Liability

As noted above, Fox identifies conduct allegedly undertaken directly by HCA during the limitations period and further contends that the actions of its subsidiary, GSH, can be ascribed to HCA under theories of alter-ego or agency liability. As HCA notes under *United States v. Best Foods*, 524 U.S. 51, 61-62 (1998), the mere fact that there exists a parent-subsidiary relationship between two corporations does not make the parent liable for the act of its subsidiary. In order for Fox's direct liability claim to be pled properly, Fox must plead facts demonstrating that HCA, as a separate entity, was a direct participant in actionable conduct. *Id*. at 63-64. HCA argues that Fox has not identified separate actionable conduct by HCA that would expose it to liability, but instead only alleges acts that occurred by or through GSH, all involving GSH's activities and affairs, without asserting specific, separate direction or control by HCA.

Fox's averments concerning the 2006 "Confidential and Security Agreement" sufficiently advance facts that connect HCA to claims four through eight in the SAC. Fox pleads that signing this agreement was an HCA corporate requirement. As a result of the agreement Fox alleges he was required to undertake a "loyalty oath" whereby he would be required to put HCA's best interests and profits ahead of all other considerations including the care of his patients. SAC ¶¶ 58-60. Fox argues that this 2006 "loyalty oath" establishes that HCA and its subsidiary, GSH, acted as a single entity based on the actions of Piche (GSH's CEO), reporting to May (HCA's Far Western President and former GSH CEO). Fox alleges that Piche participates in HCA's executive bonus plan based on hospital profits. *Id*., ¶ 15. He also alleges that Piche appoints the members of the BOT and sits on that board, which ultimately decides on physician privileges. *Id*., ¶ 16. Fox pleads that Piche, GSH's CEO, attempted to gain Fox's assent to the alleged HCA corporate loyalty oath by telling him that he had to sign it if he wanted to practice at GSH. When Fox refused to sign, his medical privileges allegedly were restricted, a decision confirmed by GSH's BOT and Piche. *Id*., ¶¶ 58-60. While the SAC does not allege that the agreement was for the sole benefit of HCA, a reasonable inference arises that the corporate parent was at least one of the intended beneficiaries and Piche,

8

who reported directly to HCA management, engaged in the challenged conduct. At least at the pleading stage, Fox advances a sufficient basis to proceed against HCA as a direct participant.[7]

### 4. Conspiracy as to HCA

Fox's fifth claim for relief alleges monopolization and attempt to monopolize in violation of Sherman Act § 2. That provision makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . ." 15 U.S.C. § 2. HCA argues that under *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 753 (1984), a corporation and its wholly owned subsidiary are legally incapable of conspiring to violate the Sherman Act as they are deemed to have a complete unity of interest. Fox acknowledges that he cannot claim a conspiracy between HCA and GSH in claims four and five under *Copperweld*. Instead, he maintains that the SAC alleges a conspiracy between HCA and GSH's medical staff to transfer patients to other HCA hospitals. *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1449-50 (9th Cir. 1988). In that case, the court held that a hospital can conspire with its medical staff because a hospital and each member of the medical staff can be deemed legally separate entities. *Id*. at 1450. If a party can show that the hospital and the medical staff are sufficiently independent from one another, this would be different from the relationship between a corporation and its officers or employees. *Id*. For example, if a physician whose staff privileges were revoked can demonstrate that the medical staff conducted the peer review that caused his termination, this could show independent conduct apart from the hospital. *Id*. In light of *Oltz* and Fox's acknowledgment that he is not attempting to advance a *Copperweld* precluded parent-subsidiary conspiracy, the motion will be denied.

### B. Remaining Claims Against GSH and HCA

Having addressed the threshold issues against HCA, the Court next analyzes the remaining individual claims against GSH and HCA (six through eight).

### 1. Claim Six: Withholding of Hospital Privileges in Violation of Public Policy

Fox's sixth claim for relief against GSH and HCA is for retaliation – the withholding of

---

[7] Because Fox makes a sufficient allegation of direct conduct by HCA, the Court need not reach the two alternative theories of potential liability based on alter-ego and agency liability.

9

hospital privileges in violation of public policy under Cal. Bus. & Prof. Code § 2056. GSH and HCA assert that California's two year statute of limitations bars Fox's sixth claim, and further that Fox has not plead the requisite nexus to alleged retaliatory conduct to sustain claim six.

### a. Cal. Civ. Proc. Code § 339(1)

GSH and HCA argue that California's two year statute of limitations under Cal. Civ. Proc. Code § 339(1) bars Fox's sixth claim under Cal. Bus. & Prof. Code § 2056. An action for wrongful denial of hospital privileges falls within Section 339(1)'s two year period. *Edwards v. Fresno Cmty. Hosp.*, 38 Cal.App.3d 702, 703 (1974). However, "when a civil conspiracy is properly alleged and proved, the statute of limitations does not begin to run on any part of the plaintiff's claims until the 'last overt act' pursuant to the conspiracy has been completed." *Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 786 (1979). Fox alleges that his sixth claim for relief is the result of ongoing civil conspiracies among defendants. SAC ¶¶ 111-15. Fox maintains that GSH's medical staff and Dr. McConnell, acting through their respective committees such as the BOT, conspired: (1) to exclude him from practice at GSH by suspending and withholding his PICU privileges for advocating on behalf of his patients' rights; and (2) to disrupt his relationships with his referral sources and the patients they would refer. Fox goes on to allege that this ongoing conspiracy on the part of these individuals extends up to the present date. For example, as previously discussed, he alleged that GSH and HCA retaliated against him in 2006 after he refused to sign the "loyalty oath" that allegedly required him to put HCA's profits ahead of his patients' interests. SAC ¶¶ 58-60. At the pleading stage, therefore, Fox satisfies his obligation to identify an overt act extending into the applicable limitations period.

### b. Nexus to the Retaliatory Conduct

Similar to the argument in the related action where the Court denied defendants' motion to dismiss, GSH and HCA contend that Fox's alleged acts of patient advocacy lack the requisite nexus to the alleged retaliatory conduct to state a claim under Section 2056. *Fox v. Piche*, No. C 08-1098 RS, Order Granting in Part and Denying in Part Motions to Dismiss and to Strike at 12-13. The SAC, like the equivalent pleading in the related case, contains the necessary nexus between the acts of defendants and the alleged acts of retaliation. As set forth in the previous related order,

underlying Fox's sixth claim is the assertion that defendants, through various committees, arbitrarily adopted the identical coverage requirements and engineered the referral of his patients to Dr. McConnell and his NorCal PICU group. By identifying retaliatory conduct linked to specific defendants, Fox has sufficiently pled a claim for violation of Section 2056 under the liberal notice pleading standards.

### 2. Claim Seven: Breach of the Implied Covenant of Good Faith and Fair Dealing

Fox's seventh claim for relief advances the theory of implied covenant of good faith and fair dealing under California common law. At oral argument, Fox acknowledged that the seventh claim for relief was based on a contract rather than a tort theory.[8] In California, every contract includes an implied covenant of good faith and fair dealing. *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 91 (1995). That covenant requires that neither party do anything which will deprive the other of the benefits of the agreement. *Id*. The prerequisite for pleading a breach of the implied covenant, therefore, is the existence of a contract. Similar to the arguments in the related action, GSH and HCA maintain there is not an express contractual relationship between them and Fox sufficient to maintain the seventh claim for relief. Specifically, GSH and HCA argue that the medical staff bylaws, privileging agreements, and hospital bylaws cannot constitute a contract. At the hearing and in his opposition, Fox acknowledges that there are only two contracts at issue: (1) the hospital bylaws; and (2) the privileging agreements. Opposition to GSH's Motion to Dismiss at 13. The eligibility of either of these to operate as a contract is a precondition to the viability of the seventh claim for relief.

As previously presented in the related case, there is a paucity of case authority directed to whether hospital bylaws or privileging agreements constitute contracts. Only one federal court has construed California law to identify hospital bylaws as a contract, and in that instance only where it imposed additional duties on the medical staff and the hospital that exceeded the scope of

---

[8] To the extent Fox's seventh claim is premised on a tort theory, it is dismissed with prejudice because the California courts have not extended a tort remedy to breaches of the implied covenant to any contract except in a limited insurance context.

11

California's administrative requirements, thereby providing independent valid consideration.[9] *Janda v. Madera Cmty. Hosp.*, 16 F. Supp. 2d 1181, 1186-88 (E.D. Cal. 1998). While the issue of whether hospital bylaws and privileging agreements constitute valid contracts in California has not been definitively determined, at this stage, just as in the related action, Fox advances a sufficient basis to show there are contracts on which to premise his claim.[10]

Fox, however, fails to allege that Samaritan LLC or HCA are parties to any contract. While Fox alludes to agency theory on this claim premised on the 2006 "loyalty oath," what is missing is any link with HCA or Samaritan LLC to the potential contracts. Instead, Fox alleges that he had express and implied-in-fact contracts with GSH, not with HCA or Samaritan LLC. SAC ¶¶ 120-24, 127, 129. Allowing Fox to amend his complaint at this juncture would prejudice HCA and Samaritan LLC who have responded to Fox's various complaints and now are seeking to move the case forward after years of litigation. Accordingly, because Fox fails to allege a contract between himself and HCA or Samaritan LLC, the claim as it relates to both of those defendants is dismissed with prejudice.

### 3. Claim Eight: Interference with Prospective Economic Relations

Fox's eighth claim for relief is for interference with prospective economic relations under California common law. GSH and HCA contend that Fox has not pled the requisite sufficient facts demonstrating an economic relationship with a probability of future economic benefit. It is worthy of note that in the related action, the Court denied defendants' motion to dismiss this claim based on the same arguments presented here. *Fox v. Piche*, No. C 08-1098 RS, Order Granting in Part and

---

[9] Fox insists that the patients he brought into GSH and its permission to allow him to use its facilities constitute valid consideration for the contracts. Fox does not maintain, however, that he received any compensation for referring patients to GSH, only that he received privileges to refer patients there. *See* Cal. Bus. & Prof. Code § 650 (forbidding consideration given as compensation or inducement for referring patients). In line with the disposition above, Fox has identified a plausible form of consideration.

[10] In *Ennix v. Stanten*, No. C 07-02486 WHA, 2007 WL 2462119, at *8 (N.D. Cal. Aug. 28, 2007), defendants contended that plaintiff never had a contract with the hospital. The court, nonetheless, determined that the question of whether the medical staff bylaws constituted a contract did not need to be resolved at the pleading stage, where it was sufficient that plaintiff made a plausible claim that he had a contractual relationship with the hospital. *Id.* Adopting the reasoning from *Ennix* in this case, deciding whether or not the hospital bylaws and privileging agreements constitute contracts need not be resolved at this point in the litigation.

Denying in Part Motions to Dismiss and to Strike at 15-17.  Fox argues that he does not allege disruption of economic relations with future, unknown, patients, but rather, that his actual business relations with his present, named, referral sources were disrupted when those sources could no longer refer PICU patients to him at GSH.  SAC ¶¶ 131-33.  As in the related case, Fox's claim survives at this stage because his sources are restricted to current referrals rather than future unknown sources, which, if proven, would constitute an economic relationship.  Accordingly, on that basis and at this stage of the proceedings, the motion to dismiss the eighth claim for relief is denied.

## V. CONCLUSION

(1) HCA's separate motion to dismiss is denied in its entirety.

(2) GSH's and HCA's joint motion to dismiss is denied in part and granted in part as follows:

    (a) The motion to dismiss claims six and eight against all defendants is denied.

    (b) The motion to dismiss claim seven:

        (i) As to Samaritan LLC and HCA, it is granted with prejudice.

        (ii) To the extent it is based on a tort theory, is dismissed with prejudice.

IT IS SO ORDERED.

Dated: _____
RICHARD SEEBORG
United States Magistrate Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
C 04-00874 RS

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Beth Ann Rains McGowen    beth.mcgowen@bingham.com, jerry.webb@bingham.com, ruth.difalco@bingham.com

Eric Peter Schoonveld    eric@hpslaw.com

George Albert Shannon , Jr    gshannon@smfs.com

James A. Hennefer    jhennefer@hennefer-wood.com

Jane Allison Stevens    jstevens@hpslaw.com

Joseph H. C. Wood    jhcwlaw@yahoo.com

Megan Dean Richardson    mrichardson@smfs.com

Samantha L Reardon    samantha.reardon@bingham.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 10/30/08**                                          **Richard W. Wieking, Clerk**

                                                             **By:    Chambers**

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
C 04-00874 RS