IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICHARD B. FOX, | No. C 04-0874 RS |
| Plaintiff, | **ORDER RE POST-JUDGMENT MOTIONS** |
| v. | |
| GOOD SAMARITAN L.P., et al, | |
| Defendants. | |
| _____/ | |

## I. INTRODUCTION

After years of litigation, and on the eve of trial, defendants brought a motion contending, among other things, that they were immune from damages in this action by virtue of certain provisions of the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101, et seq. ("HCQIA"). The Court agreed and entered judgment in defendants' favor. Plaintiff now seeks to vacate that judgment under Rule 59(e) of the Federal Rules of Civil Procedure. Plaintiff has also filed a motion challenging defendants' cost bill. Defendants, in turn, move for an award of attorney fees under HCQIA.

1

For the reasons set out below, the motion to vacate and the motion for attorney fees will be denied. In the unusual circumstances of this case, costs will not be allowed.

## II. DISCUSSION[1]

A. <u>Motion to vacate</u>

"Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 128 S.Ct. 2605, 2617 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127-128 (2d ed.1995)). Despite plaintiff's valiant effort to characterize his motion as being based on deposition testimony taken after the underlying motion was briefed, the points he attempts to make are, at most, refinements of arguments he advanced previously and/or are based on case law and legislative history that he could have presented previously. Thus, the motion to vacate can and will be denied on the grounds that plaintiff has not made the threshold showing that the circumstances warrant reconsidering the decision already reached.[2]

The motion also fails on the merits. Plaintiff lays heavy emphasis on a footnote in *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991). In *Pinhas*, the question was whether a doctor's antitrust claim needed to include averments showing a "factual nexus between the alleged boycott and interstate commerce" to support jurisdiction under the Sherman Act. *Id*. at 325. At no time was the Court asked to construe HCQIA or to decide its effect. The case had been dismissed at the pleading stage. *Id.*

---

[1] The factual background of this action has been recounted in multiple prior orders and is well known to the parties. It will not be repeated here.

[2] Defendant HCA, Inc. correctly points out that plaintiff did not challenge the additional independent basis on which it was granted summary judgment. Thus, there would be no basis to vacate the judgment as to HCA in any event.

In explaining its conclusion that federal jurisdiction existed, the Court observed that the peer review process is "congressionally regulated." *Id* at 332. It was in *that* context that the Court inserted footnote 12, which states in full:

> See Health Care Quality Improvement Act of 1986, 100 Stat. 3784, 42 U.S.C. § 11101 *et seq*. The statute provides for immunity from antitrust, and other, actions if the peer-review process proceeds in accordance with § 11112. Respondent alleges that the process did not conform with the requirements set forth in § 11112, such as adequate notice, representation by an attorney, access to a transcript of the proceedings, and the right to cross-examine witnesses. According to the House sponsor of the bill, "[t]he immunity provisions [were] restricted so as not to protect illegitimate actions taken under the guise of furthering the quality of health care. Actions ... that are really taken for anticompetitive purposes will not be protected under this bill." 132 Cong.Rec. 30766 (1986) (remarks of Rep. Waxman).

500 U.S. at 332 n.12.

Nothing in this footnote represents a holding that supports a different result here. The *Pinhas* plaintiff had *alleged* non-compliance with § 11112—averments presumed true at the procedural juncture of that case. Here, in contrast, the Court has found on summary judgment that plaintiff failed to rebut the presumption of procedural compliance embodied in § 11112.[3]

Plaintiff seizes on the *Pinhas* court's quotation of Representative Waxman's comments, and has also provided other excerpts of the legislative history that are to a similar effect. The most these materials show, however, is that members of Congress were attempting to strike a balance. However hopeful Representative Waxman may have been that "illegitimate actions" would not be

---

[3] To the extent plaintiff is suggesting that the Supreme Court's reference in footnote 12 to "adequate notice, representation by an attorney, access to a transcript of the proceedings, and the right to cross-examine witnesses," somehow means those particular items are always required, he is asking far too much from this dicta. It is apparent the Court was merely referring to the *Pinhas* plaintiff's particular complaints, and to the items set out in § 11112 (b). As explained in the order granting summary judgment, however, §11112(b), only provides a "safe harbor"—it also expressly provides that a failure to comply with all of its provisions, "shall not, in itself, constitute failure to meet the standards of subsection (a)." See *Smith v. Ricks*, 31 F.3d 1478, 1485 (9th Cir. 1994) ("we reject as dicta any suggestion in *Austin* that a hospital [must] satisfy § 11112(b) in order to receive immunity.") Nor is the footnote a sufficient basis for reading out of the statute the provision of § 11112 (a) allowing for "such other procedures as are fair to the physician under the circumstances."

3

protected, the statute as actually enacted created an *objective* standard rendering subjective motivations irrelevant. *Austin v. McNamara*, 979 F.2d 728, 734 (9th Cir.1992). Here, plaintiff appears to be suggesting, in essence, that if a plaintiff has a colorable anti-trust claim, there can be no immunity under HCQIA. The stated purpose of the statute, however, was to address the concern that, "[t]he threat of private money damage liability under Federal laws, including treble damage liability under Federal antitrust law, unreasonably discourages physicians from participating in effective professional peer review." §11101(4). By suggesting that the potential presence of a viable antitrust claim strips defendants of immunity, plaintiff is asking the Court to rewrite the statute. Accordingly, the motion to vacate is denied.

B. Motion for attorney fees

Section 11113 of HCQIA provides, "[t]he court shall, at the conclusion of the action, award to a substantially prevailing party defending against any such claim the cost of the suit attributable to such claim, including reasonable attorney's fee, if the claim, or the claimant's conduct during the litigation of the claim, was *frivolous, unreasonable, without foundation, or in bad faith*." (Emphasis added.) The Ninth Circuit has explained that, "[t]he policy behind this provision is clear: Congress wanted to encourage professional peer review by limiting the threat of unreasonable litigation expenses." *Ricks*, *supra*, 31 F.3d at 1487.

Defendants' fee motion initially sought to recover all of the millions of dollars they had incurred over the years this litigation was pending. On its own motion, the Court issued an order advising that defendants at most might be entitled to recover fees reasonably attributable to litigating and prevailing on the HCQIA immunity defense, and requesting that defendants submit a revised claim limited to such fees. The Court authorized defendants to respond to the points made in that order as well. Defendants thereafter submitted a revised claim for approximately $160,000 in attorney fees. Defendants expressly reserved the right to appeal the Court's prior order limiting the potential fee recovery, but offered little argument that the limitation was not warranted.

4

At this juncture, the Court must decide the question it previously left open—whether plaintiff's claim, or conduct during litigation, was "frivolous, unreasonable, without foundation, or in bad faith" so as to support an award of attorney fees.  Defendants argue, essentially, that the Court's order finding immunity under HCQIA plainly demonstrates that the action was frivolous from the outset—everything upon which immunity was based existed and was known to plaintiff before he first filed suit.  Plaintiff, in turn, argues essentially that the action was not frivolous because, contrary to this Court's conclusion, there is no HCQIA immunity.

The issue of whether or not this action was frivolous or was pursued in bad faith does not turn, however, on the correctness of this Court's application of HCQIA immunity. The years of litigation in which defendants engaged before raising the HCQIA issue again undermines their arguments.  If it had been clear and obvious from the outset that immunity applied, defendants, who were at all times represented by reputable and competent counsel, surely would have raised the issue sooner.  Although the Court eventually ruled in defendants' favor, it does not appear to have been intuitive even to those practicing in this field that the statute would necessarily operate to bar the claims.  Accordingly, the motion for attorney fees is denied in its entirety.

## C.  Bill of Costs

Under Rule 54 of the Federal Rules of Civil Procedure, ordinarily costs are taxed by the Clerk in the first instance, and only if a party seeks Court review of the Clerk's determination does he or she file a motion.  Fed. R. Civ. P. 54 (d) (1).  Here, plaintiff began by filing a motion directly on the Court's calendar.  Defendants noted the procedural impropriety, but elected to respond on the merits, and the Court heard the motion.  Then, while the motion was under submission, the Clerk, acting in the ordinary course of business, taxed the cost bill, allowing only $49,326.33 of the $99,895.94 claimed.  That effectively disposes of all of the particularized objections plaintiff raised to the cost bill, and those objections will not be considered further.

Remaining to be decided is whether costs should be completely disallowed under the particular circumstances of this case. In *Association of Mexican-American Educators v. State of*

*California*, 231 F.3d 572, 591-92 (9th Cir. 2000), the Ninth Circuit rejected any implication from prior cases that costs could only be disallowed to a prevailing party as punishment for misconduct. The court explained that Rule 54 "creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Id.* at 591. A district court disallowing costs must "explain why a case is not "ordinary" and why, in the circumstances, it would be inappropriate or inequitable to award costs." *Id.* at 592.

Here, even after the Clerk's rejection of approximately half the costs claimed, defendants are seeking to recover a substantial sum of money they spent over approximately six years of litigation. Virtually none of those costs would have been incurred in the first instance had defendants acted promptly to enforce their HCQIA immunity. Thus, for much the same reasons as set forth in the Court's April 19, 2010 order regarding the attorney fee claim, it would be inequitable for defendants to recover costs in this action. It was in defendants' power to avoid those costs in the first instance. Having failed to do so, for whatever reason of strategic choice or strategic error, they must now bear their own costs.[4]

*Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719 (7th Cir. 2008), cited by defendants, does not compel a different result. Although there the court rejected as "frivolous" an argument that costs should be denied based on a defendants' delay in raising a defense, the record in that case provided no clear indication as to when defendants could have successfully first raised the defense, how much discovery would have first been necessary, and the like. Declining to turn what is supposed to be a summary procedure for awarding costs "into an inquest on the winning party's litigation strategy," the court rejected the mere length of litigation as a basis to withhold costs.

---

[4] At the hearing, defendants proposed submitting a revised cost bill claiming only those costs associated with presenting the HCQIA defense, much as they revised their attorney fee claim. Although defendants likely would have incurred some costs even if they had presented the defense without delay, it is not persuasive that any significant costs are fairly attributable to presenting the HCQIA defense, on the particular factual record of this case. Accordingly, the request to submit a revised cost bill is denied.

6

1    This Court agrees that the cost bill procedure should not ordinarily include any second

2    guessing into how much sooner the litigation might have ended had the defendants made other or

3    different tactical choices along the way.   The facts here, though, are highly unusual.  Again, by

4    defendants' own arguments, the defense was available from the outset and required virtually no

5    discovery.   Defendants actually made a summary judgment motion in 2007 without raising the

6    defense.  Under these circumstances no "inquest" is necessary to conclude that defendants should

7    have presented the defense long before they did.

8

9                                              III.  CONCLUSION

10    Plaintiffs' motion to vacate the judgment is denied.  Defendants' motion for attorney fees is

11    denied.  Plaintiffs' objection to the cost bill is sustained on the grounds that it would be inequitable

12    for defendants to recover costs, on the particular facts of this action.  The parties shall bear all their

13    own costs.

14

15    IT IS SO ORDERED.

16    Dated: 06/30/2010

17                                        _____
                                        RICHARD SEEBORG
                                        UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

                                              7